OPINION OF THE COURT
Bruce McM. Wright, J.
In this CPLR article 78 proceeding, petitioner Columbus *67 Park Corporation challenges respondent Department of Housing Preservation and Development’s (HPD) failure to issue a "letter of no objection”. The letter of no objection is sought by petitioner in connection with petitioner’s intent to dissolve as a limited-profit housing company. Petitioner seeks a judgment directing HPD to issue the letter of no objection, and an award of incidental damages against HPD.
BACKGROUND
The facts underlying this dispute, as set forth in the pleadings, may be summarized as follows:
Columbus Park Apartments is a city-regulated, middle-income cooperative housing development located on Columbus Avenue between 93rd and 94th Streets, in Manhattan, which is in a neighborhood designated as. the West Side Urban Renewal Area. This designation is pursuant to a West Side Urban Renewal Plan (WSURP) which was approved by the New York City Board of Estimate in 1962. The Board’s resolution adopting the plan notes:
"the plan provides for the renewal of a 20-block area on Manhattan’s West Side, adjacent to Central Park, through a combination of renewal techniques, including:
"1. Replacement of existing substandard structures with new housing;
"2. Rehabilitation of fundamentally sound buildings which have deteriorated but retain potentialities of providing good housing;
"3. Conservation of existing sound development.
"4. Provision of necessary community facilities and amenities.”
WSURP breaks the area into redevelopment parcels which are each given a number designation. The plan defines the principal use for each parcel. The uses include residential, retail commercial, general office and banking, public (schools and school playgrounds) and semipublic. The residential category is subdivided into three parts; certain parcels are to be used for "public housing”, other parcels are to be used for "tax-abated housing at moderate rentals or carrying charges” and other parcels are to be used for "full tax-paying housing”. Columbus Park Apartments is located on parcel 16, which is designated by the plan as one of the parcels which shall be used for "tax-abated housing at moderate rentals or carrying charges”.
*68 Petitioner Columbus Park Corporation is a limited-profit housing company organized pursuant to article 2 of the Private Housing Finance Law (commonly known as the Mitchell-Lama Law). The Private Housing Finance Law provides a mechanism for the creation of low-income housing. The policy and purpose of article 2 of the Private Housing Finance Law is to make provision "by which private free enterprise may be encouraged to invest in companies regulated by law as to rents, profits, dividends and disposition of their property or franchises and engaged in providing such housing facilities and other facilities incidental or appurtenant thereto for families or persons of low income” (Private Housing Finance Law § 11).
In March 1964, Columbus Park Corporation acquired parcel 16 from the city. In conjunction with the purchase of parcel 16, petitioner obtained a city-aided mortgage loan as well as a 50% exemption of the real property from local and municipal taxes. The terms and conditions of the acquisition are set forth in a land disposition agreement (LDA) dated March 19, 1964. The LDA incorporates the West Side Urban Renewal Plan as well as a project plan summary. Occupancy of the newly constructed building began in April 1967.
THE ARTICLE 78 PROCEEDING
The dispute between petitioner and respondents stems from Columbus Park Corporation’s stated intention to prepay its mortgage obligation to the city and other lenders, and voluntarily dissolve as a limited-profit housing company, pursuant to Private Housing Finance Law § 35 (2). In this connection, Columbus Park intends to convert the property to private cooperative ownership. A noneviction offering plan of voluntary dissolution and conversion was accepted for filing by the New York State Department of Law in July 1989 and was declared effective in December 1989.
An impediment to the voluntary dissolution of the corporation and the conversion to private cooperative ownership is HPD’s refusal to issue a letter of no objection. The issuance of such a letter is part of the procedure for dissolution of Mitchell-Lama housing companies, as set forth in HPD’s regulations. Although petitioner has submitted the documentation required by the regulations, and complied with the notice requirements of those regulations, HPD has refused to issue a letter of no objection. The basis for this determination is set *69 forth in an April 30, 1990 letter from Robert J. Klehammer, HPD Assistant Commissioner, to petitioner’s counsel:
"HPD has reviewed, among other things, the Land Disposition Agreement with the City and the Deed from the City for the above mentioned project. We have concluded that the Urban Renewal Plan and the Plan and Project approved for the Mitchell-Lama housing company, both of which are incorporated in the Deed and Land Disposition Agreement and made effective for a forty (40) year period preclude the conversion of the above mentioned project from a middle income, subsidized cooperative to a market rate, unsubsidized cooperative until the expiration of the aforementioned forty (40) year period.
"A modification of the terms of the Plan and Project and the Urban Renewal Plan would require approval by the Board of Estimate or the City Council after the dissolution of the Board and could be subject to the Uniform Land Use Review Process contained in section 167-c of the City Charter.”
In support of this petition, Columbus Park Corporation argues that it has met the requirements for dissolution set forth in the Private Housing Finance Law and HPD’s regulations, and that therefore, HPD must issue a letter of no objection. Petitioner denies that the 40-year covenants referred to in HPD’s April 30, 1990 letter are an impediment to dissolution.
Private Housing Finance Law § 35 (2) provides, with respect to voluntary dissolution: "A company aided by a loan made after [May 1, 1959], may voluntarily be dissolved, without the consent of the commissioner or of the supervising agency, as the case may be, not less than twenty years after the occupancy date upon the payment in full of the remaining balance of principal and interest due and unpaid upon the mortgage or mortgages and of any and all expenses incurred in effecting such voluntary dissolution.”
HPD’s regulations, "Governing Dissolution of Limited-Profit Housing Companies Pursuant to the Private Housing Finance Law”, set forth a procedure by which the companies may dissolve. This procedure includes the filing of a notice of intent to dissolve; the payment of mortgages; the service of a public information notice; and the issuance by HPD of a letter of no objection. Section 11 (d) of the regulations states: "Issuance of Letter of No Objection. After approval by HPD of the accounting schedule, as amended to the date of dissolution, *70 the housing company shall remit to HPD a check or checks in the full amount owed to the City as defined above. Said payment shall be held by HPD pending housing company certification of compliance with sub-sections (e) (f) (g) (h) and (i) and any other relevant sections of these regulations and of law. Upon receipt of payment and subject to compliance by the company with the paragraphs below, HPD shall issue a Letter of No Objection to the housing company’s filing of a Certificate of Dissolution with the New York State Secretary of State.” (HPD Regs, art 13, § 11 [d].)
Petitioner argues that it has complied with all of the requirements of the Private Housing Finance Law and HPD’s regulations, that it does not need the consent of HPD to dissolve (Private Housing Finance Law § 35 [2]), and that therefore, HPD must issue a letter of no objection.
However, as respondents correctly point out, when petitioner acquired the property from the city, the parties executed a land disposition agreement and a deed, which contained specific covenants and agreements. The LDA incorporates the West Side Urban Renewal Plan, as well as a project summary. The LDA provides that any deed executed by the city must contain the following covenants which shall run with the land, and bind the grantee (petitioner), as well as the grantee’s successors or assigns:
"(a) A covenant that the grantee, its successors and assigns of the land conveyed or any part thereof and any lessee of the land conveyed or any part thereof will and shall carry out the housing project as in this Agreement provided, and will and shall devote such land to the uses specified in the Urban Renewal and Project Plans contained in Schedules C-l and C-2 of this Agreement as said Plans may exist from time to time. Said covenant is to run from the date of conveyance for a period of forty (40) years from the date of completion of the housing project as said completion is defined in Paragraph 304 of this Agreement.
"(b) A covenant that from the date of conveyance for a period of forty (40) years from the date of completion of the housing project as said completion is defined in Paragraph 304 of this Agreement, the land conveyed shall not be used for any use other than the uses specified therefor in the Urban Renewal and Projects Plans and contained in Schedules C-l and C-2 attached to this Agreement or contrary to any limitations or requirements of said Plans.
*71 "(c) A covenant that from the date of conveyance for the period of forty (40) years from the date of completion of the housing project no change shall be made in the housing project as set forth in the Urban Renewal and Project Plans contained in Schedules C-l and C-2 of this Agreement, without the consent of the City Planning Commission and the Board of Estimate of the City or of the respective successors of said Commission and Board” (emphasis supplied).
The deed also contains similar covenants: "The party of the second part, by the acceptance of this deed, covenants and agrees for and on behalf of itself, its successors and assigns of the land conveyed * * * that they will and shall carry out the housing project as provided in the agreement entered into between the parties * * * and will and shall devote the land to the uses specified in the Urban Renewal and Project Plans contained in Schedules C-l and C-2 of the said agreement entered into between the parties hereto * * * as said plans may exist from time to time. Said covenant is to run from the date of conveyance for a period of forty (40) years from the date of completion of the housing project” (emphasis supplied).
The deed also provides that "[t]he terms 'uses specified in the Urban Renewal Plan’ and 'land use’ referring to provisions of the Urban Renewal Plan, or similar language, herein shall include the land and all building, housing, and other requirements or restrictions of the Urban Renewal Plan pertaining to such land.”
What are the uses for parcel 16, as specified in the WSURP? Petitioner asserts that the specified use is residential, and that the conversion of the cooperative to private ownership is not contrary to that use. However, the plan mandates a specific type of residential use for parcel 16. Certain parcels are designated to be used for "public housing”, and others are designated to be used for "full tax-paying housing”. The third category of parcels, which includes parcel 16, is designated for use as "tax-abated housing at moderate rentals or carrying charges”. The redevelopment areas land use map, referred to as map 3 in the plan, also designates parcel 16 as "tax-abated housing at moderate rentals or carrying charges”.
The project plan summary, which is also incorporated into the LDA, states, in pertinent part: "This Project is a middle income Cooperative Housing Development planned for Stage I of the West Side Urban Renewal Plan”.
Thus, contrary to petitioner’s assertion that it is bound only *72 by a 40-year covenant to maintain the parcel for residential use, the covenant is more specific. It binds petitioner and its successors to use the property for "tax-abated housing at moderate rentals or carrying charges”.
Petitioner makes much of the fact that a 1979 amendment to the WSURP changed the language of the land use provisions. The original plan contained language that the parcels "shall be used” for certain purposes. The 1979 amendment to the plan states that the parcels "shall be developed” for certain purposes. Petitioner relies on this change to support its argument that the property was only to be developed as "partially tax exempt housing at moderate rentals or carrying charges”, but did not have to be used for those purposes. The court does not see the logic of an interpretation of the WSURP which binds petitioner to develop the property for a certain use, but does not bind petitioner to actually maintain the property for that use. Further, it appears that petitioner has imparted too much significance to this change of language. The City Planning Commission’s report on the 1979 amendment, a 23-page document which summarizes the major changes contained in the 1979 amendment, as well as the amendments and changes to the plan which were made between 1963 to 1976, does not even mention this change of language.
What emerges from a reading of the contract between the parties (which incorporates the WSURP) and the provisions of the Private Housing Finance Law and HPD’s regulations is the following:
The Private Housing Finance Law provides petitioner with a statutory right of dissolution. However, as is pointed out by petitioner, "[i]t should not be forgotten that the issue in this proceeding is the interpretation of a real estate contract.” This court finds that the 40-year covenants contained in the LDA and the deed bind petitioner and its successors to use the land for residences at moderate rentals or carrying charges. This contractual duty must be read in conjunction with and in addition to petitioner’s statutory right to dissolve. Thus, it is not enough for petitioner to simply rely on the provision of the Private Housing Finance Law (§ 35 [2]) which states that a company may voluntarily be dissolved, without the consent of the supervising agency.
It seems clear that the dissolution of petitioner and the conversion of the property to private ownership, pursuant to *73 the terms of the current offering plan, will affect the use of the parcel, as specified in the WSURP. After the conversion, rental apartments which become vacant, as well as apartments which are purchased by tenants and then sold, will no longer be reserved for middle-income tenants. The agreement between petitioner and the city contains several references to the fact that no change shall be made in the housing project without the consent of the City Planning Commission and the Board of Estimate. This consent has not yet been obtained.
Petitioner’s citation to Matter of Park W. Vil. Assocs. v Abrams (127 Misc 2d 372, affd 104 AD2d 741, affd 65 NY2d 716) does not support petitioner’s contention that respondents have acted improperly. In Park W. Vil. Assocs. (supra), Special Term found that the Attorney-General had misinterpreted a contract between the city and the owner of the property. That contract contained a 40-year covenant running with the land, which prohibited any change in the project as set forth in the "Redevelopment Plan of the Area”, without the consent of the city. The Attorney-General took the position that a change in the project would occur if the building, which was occupied solely by rental tenants, was converted to a cooperative. After analyzing the provisions of the contract, specifically the redevelopment plan, the court concluded that the changes requiring prior city approval related to land use and density, and that the conversion to a cooperative was not such a change. However, unlike the building in this case, the buildings in Park West Village were limited only to a land use that was residential. The land use was not further limited to housing at moderate rentals or carrying charges.
As noted previously, petitioner’s statutory rights must be read in conjunction with the contract between the parties. The statutory privilege of voluntary dissolution does not exist in a vacuum. Petitioner is bound by the covenants contained in the LDA and the deed, covenants which reflect the spirit of the WSURP.
In view of the foregoing, it was rational and a proper exercise of discretion for HPD to decline to issue a letter of no objection on a pro forma basis. However, this court is disturbed by HPD’s laggard approach to raising the objections that have resulted in this proceeding. Petitioner filed a notice of intent to dissolve with HPD in March 1989. In April 1989, HPD acknowledged receipt of the notice and informed petitioner that the notice and supporting documents were in compliance with HPD’s regulations. HPD also informed peti *74 tioner of the remaining required steps for dissolution, and further correspondence was exchanged. Petitioner then proceeded with its plan to convert the building to private ownership. An offering plan was accepted for filing by the Department of Law in July 1989, and was declared effective in December 1989. According to petitioner, more than 90% of the tenant shareholders have subscribed to the plan. Despite all of this activity on the part of Columbus Park Corporation, HPD did not bestir itself to voice any objection to the dissolution, until February 1990, almost a year after petitioner had started the dissolution process. HPD’s extreme delay in registering an objection to petitioner’s plan is not condoned by this court.
Notwithstanding the foregoing, petitioner has not demonstrated that HPD has acted irrationally or arbitrarily in declining to issue a letter of no objection at this time.
Accordingly, for the above-stated reasons, this petition is dismissed.