OPINION OF THE COURT
 

 Hancock, Jr., J.
 

 Both petitioners (owners) are limited-profit housing companies formed under article II of the Private Housing Finance Law to provide housing for low and moderate income persons and families, commonly known as Mitchell-Lama housing. They seek dissolution so that they may convert to a more profitable form of housing company. The common issue is whether restrictive covenants contained in the parties’ respective agreements and deeds prohibit the owners from dissolving after 20 years as Mitchell-Lama housing pursuant to Private Housing Finance Law § 35 (2). For the reasons that follow, we conclude that by the terms of the covenants in each case the owners, in exchange for substantial financial aid, agreed to further the purpose of the Mitchell-Lama program by providing affordable housing for the additional time period specified in their contracts. Accordingly, we reverse the respective orders of the Appellate Division.
 

 I
 

 Mitchell-Lama Housing
 

 The Mitchell-Lama Law (Private Housing Finance Law art II) is a government program for encouraging the private development of low and middle income housing. As the Legislature found, such affordable housing "cannot readily be provided by the ordinary unaided operation of private enterprise” (Private Housing Finance Law § 11). The program encourages such housing by offering State and municipal assistance to developers in the form of long-term, low-interest government mortgage loans and real estate tax exemptions. In return for these financial benefits, developers agree to regulations concerning rent, profit, disposition of property and tenant selection
 
 (see,
 
 Private Housing Finance Law §§ 20-23, 28, 31, 33;
 
 see generally,
 
 9 NYCRR 1700.1
 
 et seq).
 

 Absent some specific restrictive covenant, a limited-profit housing company, aided by a loan made after May 1, 1959, may "voluntarily dissolve”, i.e., become deregulated. Under Private Housing Finance Law § 35 (2), the only conditions imposed on a housing company for dissolution without the
 
 *24
 
 consent of the supervising agency, are that it pay the remaining mortgage loan and all expenses incurred in the dissolution and that at least 20 years have elapsed since the occupancy date. If allowed to dissolve as Mitchell-Lama housing, Columbus Park will convert to unregulated cooperative housing and Bronx Park East will be regulated under the less stringent Rent Stabilization Law.
 

 Columbus Park
 

 Columbus Park is a New York City-regulated, middle-income cooperative housing development located in Manhattan in a 20-block neighborhood designated as an urban renewal area by the West Side Urban Renewal Plan (WSURP). The goals of WSURP are renewing the neighborhood by planning for new housing, rehabilitating deteriorated buildings, conserving sound development and providing necessary community facilities. WSURP’s ultimate aim is to produce a neighborhood with persons of various incomes and ethnic backgrounds.
 

 Under WSURP, certain parcels within the 20-block area are designated for redevelopment and numbered 1 to 46, including parcel 16 on which Columbus Park is located. In 1964, petitioner Columbus Park acquired parcel 16 from the City at a small fraction of its market value so that it could develop the site for limited-profit middle-income housing. Columbus Park was provided a 50-year, low-interest, City-aided mortgage loan and a 50% exemption from the local and municipal real property taxes for up to 30 years.
 

 The terms and conditions of the acquisition are set forth both in a land disposition agreement (LDA) and in the deed. These documents contain a covenant that parcel 16 shall be devoted "to the uses specified in the Urban Renewal and Project Plans” and that such obligation is to run for 40 years from the date of completion of the housing project. The LDA also requires that for 40 years parcel 16 "shall not be used for any use other than the uses specified therefor in the Urban Renewal and Project Plans * * * or contrary to any limitations or requirements of said Plans” and that "no change shall be made in the housing project as set forth in the * * * Plans * * * without the consent of the City Planning Commission [CPC] and the Board of Estimate [BOE]”.
 

 WSURP contains two sections, Cl and C2, with two accompanying maps, numbers 2 and 3. Cl and map 2 address the
 
 *25
 
 general land uses for the entire WSURP area. C2 and map 3 show the portions of the area designated for redevelopment as numbered parcels (e.g., the parcel in question here, number 16) and the specific use required for each parcel so numbered. Section Cl states that the land uses shall be as shown on map 2, designated "Land Use Map”. Map 2 shows the general land uses for the entire 20-block area, including both the areas to be redeveloped and those not to be redeveloped under WSURP. On map 2, the area corresponding to parcel 16 is located within a section generally designated, in part, as residential use. Section Cl generally defines residential uses as including schools, libraries, museums, churches, health centers, community centers, and other similar uses. Significantly, section Cl provides that residential uses shall be construed to include that section’s general definition of residential uses
 
 '[ejxcept in areas proposed for redevelopment under
 
 C2” (emphasis added). Section C2 specifies that "[t]he principal use of each redevelopment parcel shall be as shown on Map 3, 'Redevelopment Areas Land Use Map’, and as set forth hereinafter.” Section C2 and map 3 both specify that parcel 16 shall be used for "tax-abated housing at moderate rentals or carrying charges”.
 
 [1]
 
 Section C2 provides that such housing can be developed pursuant to the Limited-Profit Housing Companies Law (Public Housing Law former art XII).
 

 The Project Plan Summary, which is also incorporated into LDA, states: "This Project is a Middle-Income Cooperative Housing Development planned for Stage I of [WSURP]” and that the project was organized by a group of upper west side citizens "concerned with the critical need for additional moderately priced housed housing accommodations.”
 

 Occupancy of Columbus Park began in April 1967. In March 1989, relying on Private Housing Finance Law § 35 (2)’s 20-year provision and despite the above 40-year covenants, Columbus Park sought to dissolve and to convert to unregulated cooperative housing. However, respondent City Department of Housing Preservation and Development (HPD) concluded that the proposed conversion would violate the parties’ covenants. Columbus Park then instituted this proceeding seeking to compel the City and HPD to allow it to dissolve. Supreme
 
 *26
 
 Court dismissed Columbus Park’s petition, holding that the covenants created a contractual duty to maintain its public status as Mitchell-Lama housing for an additional 20-year period beyond the 20-year minimum of Private Housing Finance Law § 35 (2) (149 Misc 2d 66); The Appellate Division, with two Justices dissenting, reversed and granted the petition. It concluded that the covenants were "something less than clear”, that the restrictive covenants should be strictly construed in favor of Columbus Park, and that it "did not waive its statutory right to withdraw from the Mitchell-Lama program after 20 years” (170 AD2d 145, 149, 150). Respondents appealed as of right pursuant to CPLR 5601 (a).
 

 Bronx Park East
 

 Bronx Park East is a Mitchell-Lama housing project located on land it purchased from New York City in 1960. The development is subsidized under the Mitchell-Lama Law by a 40-year, 4% mortgage from the State and by a 40% municipal property tax abatement from the City. In October 1960, Bronx Park East applied to the State Division of Housing (respondent State Division of Housing and Community Renewal’s [DHCR] predecessor) and the BOE for approval of the housing project and the associated land acquisition, mortgage financing and tax exemption. The application contained a detailed plan for the construction, financing and maintenance of the project as Mitchell-Lama housing and requested "the indorsement of the Commissioner of Housing * * * of a limited-profit housing company which is intended to serve a public purpose”. In this application, Bronx Park East agreed "to remain subject to the supervision and control of the Commissioner, to acquire all real and personal property, to erect all structures for the proper effectuation of the purposes of [the Mitchell-Lama Law].”
 

 The CPC approved the proposed project in December 1960. It found the project suitable for development under the Master Plan "in conformity with an overall plan for providing housing facilities for persons of low income.” The BOE also approved the project, the proposed tax abatement and the sale of the City property. The BOE approval resolutions and the subsequent May 1961 deed provide that Bronx Park East agrees to "devote the land to the uses specified in the plan for the area, approved by the Board of Estimate for Bronx Park East * * * for a period of fifty (50) years from the completion
 
 *27
 
 of the clearance, replanning and reconstruction and neighborhood rehabilitation of the area.” In addition, the resolutions and deed declare that for the 50-year period, "no change shall be made in the use of the land as specified in the plan of the area without the consent of the State Commissioner of Housing.”
 

 In July 1988, pursuant to Private Housing Finance Law § 35 (2) and notwithstanding the above covenants, Bronx Park East submitted to DHCR a Notice of Intent to dissolve. Following lengthy correspondence and discussions between the parties, DHCR rejected the application as barred by the restrictive covenants. Bronx Park East then commenced this proceeding to compel DHCR to allow it to prepay its loan and to dissolve. Supreme Court granted the petition to the extent of directing DHCR to allow Bronx Park East to proceed with the requirements for dissolving (first and second causes of action) and dismissed Bronx Park East’s taking claim (third cause of action). The court concluded that "the totality of the facts and circumstances presented showed that Bronx Park East did not waive its statutory right to dissolve as a Mitchell-Lama company” after 20 years, and that the covenant only required that the land "be used for residential housing for a period of 50 years.” The Appellate Division affirmed, on the authority of
 
 Columbus Park,
 
 with one Justice concurring on constraint of that decision. Respondents now appeal pursuant to leave granted by the Appellate Division.
 

 II
 

 The central issue in each case is whether petitioner owners are bound by the restrictive covenants to provide Mitchell-Lama housing for more than the statutory 20-year minimum. The owners’ contractual duties under the restrictive covenants must be read in conjunction with their right to dissolve after 20 years pursuant to Private Housing Finance Law § 35 (2). When construing contracts, "due consideration must be given to the purpose of the parties in making the contact” and "[a] fair and reasonable interpretation, consistent with that purpose, must guide the courts in enforcing the agreement”
 
 (Matter of Cromwell Towers Redevelopment Co. v City of Yonkers,
 
 41 NY2d 1, 6).
 

 For the covenants to supersede the owners’ statutory right, they need not expressly provide for a waiver of their right under Private Housing Finance Law § 35 (2) but must have
 
 *28
 
 clearly intended that effect
 
 (see, City of New York v State of New York,
 
 40 NY2d 659, 669;
 
 Selzer v Baker,
 
 295 NY 145, 149;
 
 Matter of Civil Serv. Employees Assn, v Newman,
 
 88 AD2d 685, 686,
 
 affd
 
 61 NY2d 1001). Similarly, because the covenants restrict the use of property, the agencies must show by clear and convincing evidence that the parties intended that the developments be restricted to Mitchell-Lama housing for 40 and 50 years, respectively
 
 (see, Huggins v Castle Estates,
 
 36 NY2d 427, 430).
 

 The issue thus reduces to whether the covenants clearly state that the owners are obligated to provide Mitchell-Lama housing for more than the minimum statutory period of 20 years. The parties’ essential disagreement is over the purpose and effect of the restrictive covenants, i.e., whether they restrict the owners to a general residential use of the land or to a particular use of the land as Mitchell-Lama housing.
 
 [2]
 

 Columbus Park
 

 The covenant language contained in the Columbus Park LDA and deed is unequivocal. Contrary to Columbus Park’s claim, the City’s interpretation of WSURP is not strained or focused on phrases taken out of context, but is a straightforward reading of WSURP’s "Land Use Plan” subsection and the accompanying land use maps previously summarized
 
 (cf., Matter of Park W. Vil. Assocs. v Abrams,
 
 127 Misc 2d 372, 381 [Sup Ct, NY County] [land was limited to multifamily residential use, but was not further restricted to any particular type of occupancy],
 
 affd
 
 104 AD2d 741,
 
 affd
 
 65 NY2d 716). Columbus Park agreed that for 40 years the subject parcel 16 "shall not be used for any use other than the uses specified therefor in the Urban Renewal and Project Plans * * * or contrary to
 
 any
 
 limitations or requirements of said Plans” (emphasis added). WSURP requires that parcel 16 shall be used for "tax-
 
 *29
 
 abated housing at moderate rentals or carrying charges”, i.e., Mitchell-Lama housing. Likewise, the Project Plan provides that the parcel is used for "Middle-Income Cooperative Housing” as part of WSURP.
 

 We recognize that WSURP in Cl and map 2 generally designates the section of the 20-block area where parcel 16 is located for residential use. But this does not conflict with WSURP’s specific requirement in C2 and map 3 that redevelopment parcel 16 be used for Mitchell-Lama housing. Requiring the parcel to be Mitchell-Lama housing is simply a more specific restriction on the use of the land; Columbus Park specifically agreed that parcel 16 would "not be used * * * contrary to
 
 any
 
 limitations or requirements of’ WSURP and the Project Plan. Limiting the parcel to Mitchell-Lama housing is one such restriction to which Columbus Park is bound.
 

 Also, Columbus Park misreads the significance of WSURP’s general designation for residential use covering the part of the 20-block area containing parcel 16. Such general designation is shown on map 2 of WSURP which specifies the general land uses for the entire plan area, including both the parcels to be redeveloped and the rest of the area not to be redeveloped. WSURP expressly excepts the redevelopment parcels from the areas governed by its general definition of residential use. Parcel 16 is one such redevelopment parcel subject to the restrictions specifically designated for parcel 16 in C2 and map 3. Thus, WSURP unequivocally limits parcel 16’s use not only to housing, but more particularly to Mitchell-Lama housing.
 

 Columbus Park points out that at the time the parties contracted, its tax exemption was for no more than 30 years
 
 [3]
 
 and that HPD’s construction would obligate it to provide middle-income housing for 40 years. It argues that it would not have agreed to remain a Mitchell-Lama housing company for 40 years because for the last 10 years it would have no financial incentive to do so. We find no merit in this contention. The duration of the tax exemption was but one part of the bargain which Columbus Park struck with the City for providing Mitchell-Lama housing. The City sold Columbus Park the parcel at below market value and provided a low-interest loan and a 50% tax exemption. The argument that this financial package from the City, including a 30-year tax exemption, was not a sufficient
 
 quid pro quo
 
 for Columbus
 
 *30
 
 Park’s agreement to provide Mitchell-Lama housing for 40 years is a matter of pure speculation and does not draw into question the clear language of the covenants and related WSURP and Project Plan as discussed above.
 
 [4]
 

 Bronx Park East
 

 The BOE resolutions approving the project and the deed provide that Bronx Park East agrees to "devote the land to the uses specified in the
 
 plan for the area, approved by the Board of Estimate for Bronx Park East
 
 * * * for a period of fifty (50) years” (emphasis added). The plain meaning of this language shows that Bronx Park East agreed to use the land as provided in the Project Plan, i.e., for Mitchell-Lama housing.
 

 Bronx Park East argues that the underlined phrase refers to the City Master Plan for future development or the City Zoning Resolution and that, therefore, the covenant merely restricts the use of the land to the broad zoning category of residential housing. But neither the Citywide Master Plan nor Zoning Resolution are plans that were "approved by the Board of Estimate for Bronx Park East”. Only the plan for the project itself is such a plan. Moreover, the plain meaning of the covenant conforms to Private Housing Finance Law § 12 (1) which defines "area” as "[a] section of a municipality in which there is to be located a project.” Again, only the Project Plan, not the Master Plan or Zoning Resolution, is such a plan for the subject "area”, as defined in Private Housing Finance Law § 12 (1). Thus, it is clear that Bronx Park East agreed to devote the land to the particular uses specified in the project plan — i.e., to construct and maintain Bronx Park East as Mitchell-Lama housing — not merely the general uses described in the Citywide Master Plan or Zoning Resolution.
 
 [5]
 

 Moreover, Bronx Park East’s interpretation of the covenant as merely restricting the land to residential use, if adopted,
 
 *31
 
 would obligate the owner to the very use already required by the Zoning Resolution and, thus, render the covenant superfluous. Such a construction which makes a contract provision meaningless is contrary to basic principles of contract interpretation
 
 (see, Two Guys from Harrison-N. Y. v S.F.R. Realty Assocs.,
 
 63 NY2d 396, 403). We conclude, therefore, that the covenant obligated Bronx Park East to provide affordable Mitchell-Lama housing, subject to the Housing Commissioner’s authority, for 50 years.
 

 Ill
 

 We have considered and rejected the owners’ other arguments. Accordingly, in the
 
 Columbus Park
 
 case the order of the Appellate Division should be reversed, with costs, and the petition dismissed; and in the
 
 Bronx Park East
 
 case, the Appellate Division order should be reversed, with costs, and respondents’ motion to dismiss petitioner’s first and second causes of action granted.
 

 Chief Judge Wachtler and Judges Simons, Kaye, Titone and Bellacosa concur.
 

 In
 
 Matter of Columbus Park Corp. v Department of Hous. Preservation & Dev:
 
 Order reversed, etc.
 

 In
 
 Matter of Bronx Park E. Hous. Co. v Higgins:
 
 Order reversed, etc.
 

 [1]
 

 . Section C2 and map 3 also specify the redevelopment parcels to be used for public housing or full tax-paying housing as well as the redevelopment parcels to be used for nonresidential uses such as commercial, public or semipublic.
 

 [2]
 

 . We recognize that Private Housing Finance Law § 35 (2) was enacted to create greater incentives than previously existed for developers to participate in the Mitchell-Lama program by reducing the minimum time period of participation in the program and eliminating the requirement that the Housing Commissioner consent to dissolution
 
 (see, 2550 Olinville Ave. v Crotty,
 
 149 Misc 2d 806, 811-812 [Sup Ct, NY County];
 
 cf.,
 
 Private Housing Finance Law § 35 [1] [allowing withdrawal from the program for earlier loans only after 35 years and with the Commissioner’s consent]). This amendment of Private Housing Finance Law §35, however, in no way prohibited developers from contractually agreeing to provide Mitchell-Lama housing for longer than the minimum statutory 20-year period.
 

 [3]
 

 . In 1978 Columbus Park’s tax exemption was extended to a maximum of 50 years.
 

 [4]
 

 . Bronx Park East makes the same basic argument regarding the duration of its tax exemption which we reject for the same reasons.
 

 [5]
 

 . Even if the covenant was referring to the Master Plan, Bronx Park East’s interpretation is not persuasive. The CPC, when it approved the proposed project based on the Master Plan, concluded that the project was "in conformity with an overall plan for providing
 
 housing facilities for persons of low income”
 
 (emphasis added). Thus, even the CPC’s interpretation of the Citywide Master Plan for future development supports the conclusion that the project was to be used only for low-income housing.