■ TRUMP VILLAGE SECTION 3, INC., Appellant, v CITY OF NEW YORK et al., Respondents. [974 NYS2d 469]—

Motion by the appellant to amend an opinion and order of this Court dated October 3, 2012, which determined an appeal from an order of the Supreme Court, Kings County, dated February 18, 2011. Cross motion by the respondents to amend the same opinion and order. Justice Lott has been substituted for former Justice Belen (see 22 NYCRR 670.1 [c]).

Upon the papers filed in support of the motion and the cross motion and the papers filed in opposition thereto, it is Ordered that the motion and the cross motion are granted, and the opinion and order of this Court dated October 3, 2012 (*Trump Vil. Section 3, Inc. v City of New York*, 100 AD3d 170 [2012]), is recalled and vacated, and the following opinion and order is substituted therefor:

Appeal by the plaintiff, in an action, inter alia, for a judgment declaring that the real property transfer tax imposed by Tax Law § 1201 (b) and Administrative Code of the City of New York § 11-2102 (a) was improperly imposed upon it, as limited by its brief, from so much of an order of the Supreme Court (Richard Velasquez, J.), dated February 18, 2011, and entered in Kings County, as denied that branch of its cross motion which was for summary judgment declaring that the real property transfer tax was improperly imposed upon it, and, upon searching the record, awarded summary judgment to the defendants declaring that the real property transfer tax was properly imposed upon it.

Cohen, J. On this appeal, we are asked to determine whether a taxable transfer occurs under Tax Law § 1201 (b) and Administrative Code of the City of New York § 11-2102 (a) when a residential housing cooperative corporation amends its certificate of incorporation as a part of its voluntary dissolution, reconstitution, and termination of participation in the Mitchell-Lama housing program (*see* Private Housing Finance Law § 10 *et seq.*).* For the reasons set forth below, we hold that because there is no transfer or conveyance of any real property or an interest in real property under those circumstances, no taxable event occurs.

Background

The plaintiff, Trump Village Section 3, Inc. (hereinafter Trump Village), owns a residential housing cooperative complex consisting of three 23-story buildings located in Brooklyn. Upon its incorporation in 1961, Trump Village took title to the underlying real property that it now owns pursuant to the Mitchell-Lama housing program.

The Mitchell-Lama housing program was established in 1955

---

* We note that the issue of whether or not this voluntary dissolution, reconstitution, and termination of participation in the Mitchell-Lama housing program constituted a taxable transfer pursuant to Administrative Code of the City of New York § 11-2102 (b) or (c) was not raised before the Supreme Court and, accordingly, is not properly before this Court (*see* CPLR 5501). Indeed, on its motion before the Supreme Court, the City of New York only argued that it was authorized to impose a tax pursuant Administrative Code of the City of New York § 11-2102 (a).

as a New York State affordable housing program. The program took its name from its legislative sponsors, former Manhattan State Senator MacNeil Mitchell and former Brooklyn Assemblyman Alfred Lama. It was created to encourage and facilitate the construction and continued operation of affordable rental and cooperative housing in the State of New York for moderate- and middle-income families. Approximately 269 Mitchell-Lama developments, representing about 105,000 apartments, were built in New York State under the program, and many consider it one of the most successful affordable housing programs of its kind.

As a Mitchell-Lama cooperative housing corporation, Trump Village enjoyed certain government benefits, including a low-interest government mortgage loan and substantial exemptions from municipal real property taxation. In return for these benefits, and as required by statute, various restrictions encumbered the cooperative corporation's tenant-shareholders, including restrictions on resale to third parties. Trump Village remained in the Mitchell-Lama program and, thus, continued to be governed by the Mitchell-Lama laws for approximately 45 years, until October 15, 2005, when it fully repaid the governmental mortgage loan that financed its development.

In early 2007, by vote of its shareholders, and with the permission of the State of New York, Trump Village terminated its participation in the Mitchell-Lama program, and, pursuant to Private Housing Finance Law § 35 (3), "reconstituted" itself as a corporation under the Business Corporation Law by amending its certificate of incorporation. While the amendments to Trump Village's 1961 certificate of incorporation removed all references to the Private Housing Finance Law, Trump Village's name, the number of and names of its shareholders, the number of shares owned by each shareholder, and Trump Village's tax identification number all remained the same. Indeed, there has been no change to the public records maintained by the New York State Department of State, which continue to list Trump Village as an active corporation incorporated in 1961.

In addition to amending its certificate of incorporation, Trump Village also amended its bylaws and the standard occupancy agreement for tenant-shareholders. However, it neither issued new shares of stock nor transferred shares to the reconstituted corporation. Instead, Trump Village amended existing stock certificates by removing certain language pertinent only to the Mitchell-Lama program, and by including a new legend pertinent to the amended bylaws. Old stock certificates were exchanged for the new stock certificates, with each shareholder holding exactly the same number of shares as before.

On August 9, 2009, the New York City Department of Finance (hereinafter the Department) issued a notice of determination to Trump Village of a tax deficiency in the sum of $21,149,592.50, which included interest and a penalty. The Department opined that since Trump Village was now a private cooperative corporation that had amended its certificate of incorporation and terminated its participation in the Mitchell-Lama program by reconstituting, it had engaged in a transaction that qualified "as a conveyance of the underlying real property." According to the Department, Trump Village was thus required, but failed, to pay a real property transfer tax (hereinafter RPTT) pursuant to Tax Law § 1201 (b) and Administrative Code of the City of New York § 11-2102 (a).

In a complaint dated October 26, 2010, Trump Village sought, inter alia, a judgment declaring that the RPTT was improperly imposed upon it, and that it is not obligated to pay the RPTT in connection with the termination of its participation in the Mitchell-Lama program. Trump Village named, as defendants, the City of New York, the Department, and David M. Frankel, as Commissioner of Finance (hereinafter collectively the City defendants). Trump Village contended that the RPTT was wholly inapplicable because, on its face, the tax applies only to transfers and conveyances of real property, or economic interests in real property, from one entity to another, and not to reconstitutions under the Mitchell-Lama housing program.

After the City defendants moved to dismiss the complaint on multiple grounds, Trump Village cross-moved for summary judgment on the complaint. In an order dated February 18, 2011, the Supreme Court, inter alia, denied Trump Village's cross motion and, upon searching the record, awarded summary judgment to the City defendants declaring that Trump Village's actions constituted a "transfer" and a "conveyance" of real property, and that Trump Village was subject to the RPTT. Trump Village appeals from so much of the order as denied that branch of its cross motion which was for summary judgment on its declaratory judgment cause of action and instead awarded summary judgment to the City defendants.

Analysis

In determining whether or not the RPTT is applicable, this Court must examine and interpret the taxing statutes. Indeed, the instant matter "presents a question of pure statutory interpretation, meriting de novo review" (*Jones v Bill*, 10 NY3d 550, 553 [2008]). We note that "interpretations of the agency charged with administering a statute are not entitled to . . . deference when . . . the issue is one of pure statutory construction"

(*Debevoise & Plimpton v New York State Dept. of Taxation & Fin.*, 80 NY2d 657, 664 [1993]).

"In the interpretation of [laws] levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out" (*American Locker Co. v City of New York*, 308 NY 264, 269 [1955] [internal quotation marks omitted]). Moreover, "[w]hen the particular [law] is one which levies a tax . . . any doubts concerning its scope and application are to be resolved in favor of the taxpayer" (*Debevoise & Plimpton v New York State Dept. of Taxation & Fin.*, 80 NY2d at 661; *see Matter of Bloomingdale Bros. v Chu*, 70 NY2d 218, 223 [1987]; *Dun & Bradstreet, Inc. v City of New York*, 276 NY 198, 204 [1937]).

Administrative Code of the City of New York § 11-2102 (a), enacted by the City pursuant to the authority delegated to it by Tax Law § 1201, provides that "[a] tax is hereby imposed on each deed at the time of delivery by a grantor to a grantee when the consideration for the real property and any improvement thereon (whether or not included in the same deed) exceed twenty-five thousand dollars." Trump Village posits that the RPTT is inapplicable to an act of reconstitution pursuant to the Mitchell-Lama housing program, because there is no deed, no delivery, no grantor, and no grantee involved in corporate reconstitution. However, the City defendants maintain that Trump Village's termination of its participation in the Mitchell-Lama housing program by way of voluntary dissolution and reconstitution falls within section 11-2102 (a), and that a provision added to the RPTT exemption section of the Administrative Code in 1994 warrants the imposition of the RPTT to Trump Village's voluntary dissolution and reconstitution. The provision recites as follows: "The [RPTT] shall not apply to any of the following deeds, instruments or transactions: . . . A deed, instrument or transaction conveying or transferring real property or an economic interest therein that effects a mere change of identity or form of ownership or organization to the extent the beneficial ownership of such real property or economic interest therein remains the same, other than a conveyance to a cooperative housing corporation of the land and building or buildings comprising the cooperative dwelling or dwellings. For purposes of this paragraph, the term 'cooperative housing corporation' shall not include a housing company organized and operating pursuant to the provisions of article two [i.e., the Mitchell-Lama law], four, five or eleven of the private housing finance law" (Administrative Code of City of NY § 11-2106 [b]

[8]). Additionally, Administrative Code of the City of New York § 11-2101 (2) defines a "[d]eed" as: "[a]ny document or writing (other than a will), regardless of where made, executed or delivered, whereby any real property or interest therein is created, vested, granted, bargained, sold, transferred, assigned or otherwise conveyed, including any such document or writing whereby any leasehold interest in real property is granted, assigned or surrendered."

The Court of Appeals has observed that

"[t]he Mitchell-Lama Law (Private Housing Finance Law art II) is a government program for encouraging the private development of low and middle income housing. As the Legislature found, such affordable housing 'cannot readily be provided by the ordinary unaided operation of private enterprise' (Private Housing Finance Law § 11). The program encourages such housing by offering State and municipal assistance to developers in the form of long-term, low-interest government mortgage loans and real estate tax exemptions. In return for these financial benefits, developers agree to regulations concerning rent, profit, disposition of property and tenant selection (*see*, Private Housing Finance Law §§ 20-23, 28, 31, 33; *see generally*, 9 NYCRR 1700.1 *et seq.*).

"Absent some specific restrictive covenant, a limited-profit housing company, aided by a loan made after May 1, 1959, may 'voluntarily dissolve,' i.e., become deregulated. Under Private Housing Finance Law § 35 (2), the only conditions imposed on a housing company for dissolution without the consent of the supervising agency, are that it pay the remaining mortgage loan and all expenses incurred in the dissolution and that at least 20 years have elapsed since the occupancy date" (*Matter of Columbus Park Corp. v Department of Hous. Preserv. & Dev. of City of N.Y.*, 80 NY2d 19, 23-24 [1992]).

Upon the voluntary dissolution of a Mitchell-Lama cooperative housing corporation, "title to the project may be conveyed in fee to the owner or owners of its capital stock or to any corporation designated by it or them for the purpose, or the company may be *reconstituted* pursuant to appropriate laws relating to the formation and conduct of corporations" (Private Housing Finance Law § 35 [3] [emphasis added]). Neither the term "reconstituted" nor any of its variations is defined in the Private Housing Finance Law.

Here, the City defendants essentially contend that, by voluntarily dissolving and subsequently reconstituting, Trump Village became a new corporation and that, accordingly, the amended certificate of incorporation constituted a deed. Thus,

they conclude that the purported deed was delivered at the time of execution, and that the purported deed was delivered by an "old" Trump Village to a "new" Trump Village. We find no support in either case law or the record for the City defendants' interpretation of the law.

Upon amending its certificate of incorporation, Trump Village remained the same entity, although it was relieved of various restrictions previously imposed upon it by the Mitchell-Lama housing program (*see Department of Justice, F.B.I. v Calspan Corp.*, 578 F2d 295, 300 [1978]; *see also* Business Corporation Law § 801). This is so even if we adopt the argument of the City defendants that the word "reconstitute" is synonymous with the word "reincorporate" (*see* 15 William Fletcher, Cyclopedia of the Law of Corporations § 7204 [2012]; *cf. People ex rel. Consolidated Kan. City Smelting & Ref. Co. v Secretary of State*, 13 App Div 50, 51-54 [1897]). Moreover, the Administrative Code's definition of the term "[d]eed," as set forth above, does not encompass Trump Village's amendment to its certificate of incorporation. Accordingly, the City defendants failed to establish, prima facie, that the RPTT was applicable to Trump Village's actions and, thus, failed to establish that the RPTT was properly imposed upon Trump Village.

The City defendants further contend that Administrative Code of the City of New York § 11-2106 (b) (8) makes it clear that the RPTT is applicable to Trump Village's reconstitution. However, that provision exempts, from the imposition of the RPTT, those transfers and conveyances of real property or an interest therein that merely effect a change in the form of ownership, except where the subject land and buildings are transferred to a cooperative housing corporation. Since the City defendants failed to establish that Administrative Code of the City of New York § 11-2102 (a) applies on its face to the manner in which Trump Village terminated its participation in the Mitchell-Lama housing program, the City defendants cannot establish the applicability of the RPTT by reference to a statutory exemption which would only be relevant if the tax were applicable in the first instance (*cf. Matter of Grace v New York State Tax Commn.*, 37 NY2d 193, 196 [1975]).

Thus, Trump Village demonstrated that it did not transfer or convey real property or an interest in real property within the meaning of Tax Law § 1201 (b) and Administrative Code of the City of New York § 11-2102 (a), and that the RPTT was improperly imposed upon it.

In light of our determination, we need not address the parties' remaining contentions.

Since this is a declaratory judgment action, the matter must be remitted to the Supreme Court, Kings County, for the entry of a judgment declaring that the RPTT was improperly imposed upon Trump Village (*see Lanza v Wagner*, 11 NY2d 317, 334 [1962], *appeal dismissed* 371 US 74 [1962], *cert denied* 371 US 901 [1962]).

Therefore, the order is reversed insofar as appealed from, on the law, that branch of Trump Village's cross motion which was for summary judgment declaring that the real property transfer tax imposed by Tax Law § 1201 (b) and Administrative Code of the City of New York § 11-2102 (a) was improperly imposed upon it is granted, and the matter is remitted to the Supreme Court, Kings County, for the entry of a judgment declaring that the RPTT was improperly imposed upon Trump Village. Eng, P.J., Skelos and Lott, JJ., concur.