OPINION OF THE COURT
Leonard B. Austin, J.
All defendants except D’Alessio Architecture, EC. (hereinafter Bay Club) move (1) to preclude the use of a forensic accounting report prepared by the court-appointed expert, Joel Rakower, CPA, based upon improper ex parte contact with the plaintiffs; (2) to appoint a new accountant to review the financial records of Bay Club of Long Beach condominiums; and (3) to impose sanctions upon plaintiffs by reimbursing Bay Club for expenses incurred in connection with the forensic accountant.
Third-party plaintiffs move for leave to enter a default judgment against third-party defendants Wagner Construction Inc. and Bud Albrecht Construction Corp.
Background
Bay Club Condominium is a luxury condominium development in Long Beach. The Condominium consists of 20 attached individual units, four cluster buildings, other common elements including an in-ground pool and clubhouse, and a marina. The individual plaintiffs are the owners of a majority of the units in the Condominium development.
Defendant Keystone Management, Inc. was the managing agent for the Condominium during the time that the board of managers was controlled by the sponsor.
*284 Defendant Bay Club of Long Beach, Inc. was the sponsor/ developer of the Condominium. Defendants Ebrahim Shokrian and Charles Rafimayeri are alleged to be the principals of Bay Club of Long Beach, Inc. and Keystone Management.
The amended complaint seeks to recover damages arising out of construction defects relating to the HVAC systems, freezing pipes, sagging floors, and leaky roofs, among other things, in the individual units. Plaintiffs further allege that the marina and dock have structural and construction defects and that the docks cannot accommodate 30-foot boats even though the offering plan indicated such size boats would be able to be docked in the marina. Plaintiffs also allege defects in the common elements.
The amended complaint also alleges that Shokrian and Rafimayeri breached their fiduciary duty to the Condominium while they were members of the board of managers. Plaintiffs seek to recover damages for this breach of fiduciary duty.
With regard to Keystone Management, plaintiffs allege that it failed to account for and collect all moneys due and owing to the Condominium during the time it was the managing agent.
By order dated August 22, 2005, the court appointed Joel Rakower, CPA, as a neutral expert, to review the records of the Condominium and issue a report of his findings. The parties consented to Mr. Rakower’s appointment.
Mr. Rakower prepared and rendered his report dated March 17, 2006. Defendants seek to preclude the use of Mr. Rakower’s report for any purpose in this litigation alleging it has been tainted by improper ex parte communications by plaintiffs’ attorney to Mr. Rakower.
On October 12, 2005, Rakower went to the office of plaintiffs’ attorney and met with plaintiffs’ attorney and Mark Grasso, one of the plaintiffs in this action. The October 12, 2005 meeting had been scheduled by plaintiffs’ attorney without notice to defendants’ counsel.
Mark Grasso is also a member of the Condominium’s board of managers and a certified public accountant.[1]
Two days after the meeting, Rakower provided the defendants’ attorneys with a request for documents which defendants assert is far beyond what would be needed for Rakower’s forensic review.
*285 On January 17, 2006, the parties stipulated that Rakower’s report would relate to the Condominium’s common charges, maintenance, management and repairs. The report would be prepared upon receipt of the relevant documents.
Nanette Watts, the accountant in Rakower’s office who was principally responsible for the preparation of the report, spoke with plaintiffs’ attorney on January 20, 2006. She also spoke with Mark Grasso regarding open items on the report on March 16, 2006, the day before the report was finalized.
Bay Club asserts the ex parte communications between plaintiffs’ counsel, Mark Grasso and Rakower and Watts so taints the report as to render it improper for the court to use or rely upon it. They also assert that the expert reached certain conclusions which are beyond the scope of his analysis, such as Keystone collected management fees for services it did not perform, Keystone used the clubhouse for office space for which it did not pay rent, Keystone breached its fiduciary duty by comingling funds, and money was collected at the closing on each unit for gates which has not been used or refunded.
Bay Club asserts Rakower relied upon information received from plaintiffs that is either untrue or irrelevant to his analysis which compromised his independence and the objectivity of the report.
For these reasons, defendants seek to preclude the use of Rakower’s report, to reimburse defendants for the cost incurred in connection with the preparation of the report and the appointment of a new accountant to review the financial records of Bay Club of Long Beach.
Discussion
This case presents issues not addressed by statute, rule, the Code of Professional Responsibility, the American Institute of Certified Public Accountants (AICPA) Code of Professional Conduct or case law, to wit: May an attorney for a party have ex parte communications with a court-appointed expert?
Code of Professional Responsibility DR 7-104 (a) (1) (22 NYCRR 1200.35 [a] [1]) prohibits an attorney from communicating with a party the attorney knows to be represented by counsel without the prior consent of counsel or unless authorized to do so by law. However, Rakower and Watts are not parties to the litigations. (See, Niesig v Team I, 76 NY2d 363 [1990].)
The relevant section of the AICPA Code of Professional Conduct requires members to maintain objectivity and be free *286 of conflicts of interest in discharging their professional responsibilities. (See, AICPA Code of Professional Conduct, ET Section 55-article IV — Objectivity and Independence; ET Section 102— Integrity and Objectivity.) These sections do not provide any specific guidance as to whether a court-appointed accountant may have ex parte communications with the attorneys for the parties.
One of the primary functions of a court-appointed expert is to provide the court with unbiased information, information not tinged by the position of the party retaining the expert. (See, Match v Match, 146 Misc 2d 986 [Sup Ct, NY County 1990]; Matter of Kenneth C. v Delonda R., 10 Misc 3d 1070[A], 2006 NY Slip Op 50026[U] [Earn Ct, Kings County 2006].) To achieve this purpose, the parties should avoid ex parte communications with court-appointed experts. (Lightman v Lightman, 253 AD2d 453 [2d Dept 1998].)
The court has the authority to prohibit ex parte communications between a party and a court-appointed expert. (See, Crawford v Greater Cleveland Regional Tr. Auth., 1991 WL 328037 [ND Ohio 1991].) The court also has the authority to direct that all communications with the expert be done through the court. (Leesona Corp. v Varta Batteries, Inc., 522 F Supp 1304 [SD NY 1981].)
In this matter, the court did not expressly limit the parties’ contact with the court-appointed expert or direct that communications with the expert be done through the court.
In the absence of such a direction, the parties should be guided by standard 11 (d) (ii) of the Civil Trial Practice Standards promulgated by the American Bar Association in February 1998. While these standards have not been adopted in New York by statute or rule, they certainly provide guidance to the court and the parties regarding the propriety of ex parte communications between parties and court-appointed experts. The standards suggest that all parties be advised of and be permitted to be present when any party meets or speaks with a court-appointed expert and that all communications between the party and the expert be in writing with copies to all parties. (See, American Bar Association Civil Trial Practice Standards standard 11 [d] [ii] [A], [B].) Plaintiffs’ initial meeting with Rakower was done without the knowledge of the defendants. Additionally, Nanette Watts spoke with Mark Grasso without advising the defendants.
The ex parte contact between Mark Grasso and plaintiffs’ attorney and the court-appointed expert places a potential taint *287 on the expert’s report and testimony. This defeats the primary purpose of a court-appointed expert, which is to eliminate disputes regarding the material considered by the expert and the expert’s methodology. (See, Zirinsky v Zirinsky, 138 Misc 2d 775 [Sup Ct, NY County 1987], affd 138 AD2d 43 [1st Dept 1988]; Match v Match, supra.)
The court finds the ex parte communications between Mark Grasso, plaintiffs’ attorney and the court-appointed expert were improper.
Rakower’s deposition testimony does not obviate this problem. He testified that he met with plaintiffs’ attorney to give him an “overview” of the matter. He testified that his findings were based upon the materials provided and not conversations had with the plaintiffs or their attorney. However, Rakower reviewed and was provided with a copy of the amended complaint which Rakower presumed to be factual. There is nothing in the amended complaint that is directly relevant to Rakower’s review. Furthermore, several of the causes of action in the complaint were dismissed by order of this court dated March 28, 2006. Thus, it is entirely possible that Rakower relied upon “facts” as pleaded in the complaint which relate to claims that have since been dismissed. Furthermore, the court does not have an objective way to determine if, and to what extent, Rakower’s and Watts’ contact with plaintiffs’ attorney and Mark Grasso, one of the named plaintiffs, affected the report.
The court further notes that the report does not provide the analysis the court directed the expert to perform. The expert was supposed to review the Condominium’s records to determine if the sponsor had paid its share of common and other charges from the date of the closing on the first unit which took place on September 17, 2002 through November 2004. While Rakower found a shortfall in deposits of common charges into the Condominium’s account, he could not determine the reason for the shortfall. Stated another way, he could not determine if the shortfall was a result of the sponsor’s failure to pay common charges or whether unit owners had withheld payment of common charges. Additionally, the Condominium’s maintenance account was not opened until nearly six months after the first unit was sold. The report does not appear to have any analysis relating to the payment of common charges prior to the opening of this account.
However, to preclude the use of the report would be inappropriate. The parties may use the report as they see fit.
*288 Since the potential taint in the report is a result of the activities of plaintiffs and their counsel, they are hereby directed to reimburse the defendants within 30 days of the date of this order for the costs incurred by defendants in the preparation of the report. This direction is not made pursuant to 22 NYCRR 130-1.1. Rather, upon appointment of Rakower, the court directed that defendants advance the cost of his service without prejudice to a later apportionment of the fees. Based upon the actions of plaintiffs and counsel, apportionment in favor of defendants is appropriate.
Furthermore, the court acknowledges that an impartial review of the financial records of the Condominium for the period in question is appropriate. Therefore, a new expert must be appointed.
Neither party shall communicate directly with the expert once the expert is designated. All requests for information made by the expert shall be made through the court with copies to opposing counsel. Communication by the parties to the expert shall be through the court with copies to the other party. The costs of the new expert shall be shared equally by the parties subject to adjustment at the conclusion of the action.
A. Default Judgment — Albrecht
Third-party plaintiffs move for leave to enter a default judgment against Wagner and Albrecht.
CPLR 3215 permits a party to obtain a default judgment against a defendant who defaults in appearance. An application for leave to enter a default judgment must be supported by proof of service of the summons and complaint, an affidavit made by a person with actual knowledge of the facts surrounding the claim and proof of the default. (CPLR 3215 [f]; see, Siegel, NY Prac § 295 [4th ed].) The party seeking a default judgment must establish the existence of a prima facie cause of action against the defaulting party. (Joosten v Gale, 129 AD2d 531 [1st Dept 1987].)
Albrecht has been served and its time to appear, answer or move has expired.
The third-party complaint alleges six causes of action against Albrecht, causes of action thirteenth through eighteenth.
The complaint alleges Albrecht was retained to perform masonry work and/or was retained to be the general contractor in connection with the construction being performed at the property. However, Albrecht was not the masonry contractor or the general contractor.
*289 Albrecht performed roofing work. The written documents relating to this work involve the installation of 90 square feet of roofing, a 200-foot ridge vent, 340 feet of ice and water shield and to line four (illegible word) with copper on buildings one and two.[2] The writings in question are proposals for the work submitted by Albrecht to Keystone Design. Keystone did not sign the proposals accepting the terms of the work. Albrecht apparently performed the work described in the writing.
The thirteenth and sixteenth causes of action allege a claim for common-law indemnification. The right to implied or common-law indemnification arises “in favor of one who is compelled to pay for another’s wrong.” (Margolin v New York Life Ins. Co., 32 NY2d 149, 152 [1973]; see, 23 NY Jur 2d, Contribution, Indemnity and Subrogation §§ 2, 87.) “In the classic indemnity case, the one entitled to indemnity from another had committed no wrong, but by virtue of some relationship with the tort-feasor or obligation imposed by law, was nevertheless held liable to the injured party.” (D’Ambrosio v City of New York, 55 NY2d 454, 461 [1982]; Glaser v Fortunoff of Westbury Corp., 71 NY2d 643 [1988].) Stated differently, “one who is liable for an injury vicariously or by imputation of law may seek common-law indemnity from a person primarily liable for the injury.” (23 NY Jur 2d, Contribution, Indemnity and Subrogation § 90.)
One whose liability is premised upon active negligence cannot obtain common-law or implied indemnity. (D Ambrosio v City of New York, supra.) “The predicate for common-law indemnity is vicarious liability without fault on the part of the proposed indemnitee.” (Kagan v Jacobs, 260 AD2d 442, 442 [2d Dept 1999]; see, Barry v Hildreth, 9 AJ)3d 341 [2d Dept 2004]; Tulley v Straus, 265 AD2d 399 [2d Dept 1999].)
The affidavit of merit of Ebrahim Shokrian does not establish a prima facie cause of action for common-law indemnification. The affidavit fails to establish any connection between the work performed by Albrecht, the damages claimed by plaintiffs and third-party defendants’ request for indemnification.
The fourteenth and fifteenth causes of action seek contractual indemnification from Albrecht.
A party seeking contractual indemnification must establish the existence of a written agreement between itself and the *290 party from whom it is seeking indemnification. (Moss v McDonald’s Corp., 34 AD3d 656 [2d Dept 2006].) Contractual indemnity can be obtained if the agreement specifically so provides or if “the intention to indemnify can be clearly implied from the language and purposes of the entire agreement, and the surrounding facts and circumstances.” (Margolin v New York Life Ins. Co., 32 NY2d 149, 153 [1973]; Watral & Sons, Inc. v OC Riverhead 58, LLC, 34 AD3d 560 [2d Dept 2006].)
The written agreement with Albrecht does not contain a contractual indemnification clause or any indication that Albrecht was providing Keystone Design with contractual indemnity. Additionally, since the written agreement was between Albrecht and Keystone Design, the claim for contractual indemnity by the third-party plaintiffs who are not parties to the contract is of dubious merit.
The seventeenth cause of action seeks to recover damages sustained by third-party plaintiffs as a result of Albrecht’s failure to procure insurance. Albrecht could be held liable to third-party plaintiffs for failure to procure insurance if Albrecht was contractually obligated to obtain insurance naming the third-party plaintiffs as named or additional insureds and failed to do so. (See, Kinney v Lisk Co., 76 NY2d 215 [1990]; Watters v R.D. Branch Assoc., LP, 30 AD3d 408 [2d Dept 2006].) The purported contract between Albrecht and Keystone Design does not contain a provision requiring Albrecht to obtain insurance for the benefit of the third-party plaintiffs. Third-party plaintiffs have failed to establish a prima facie cause of action. Therefore, the court cannot grant a default judgment on this cause of action.
The eighteenth cause of action sets forth a cause of action for contractual indemnity alleging breach of warranty. The Albrecht contract states, “All material is guaranteed to be as specified.” The agreement references “40 yr. Landmark [illegible].” To the extent that this cause of action is premised upon breach of express warranties (see, UCC 2-313), the papers submitted in support of the motion do not indicate what materials provided by Albrecht were warranted, what the nature of those warranties were, how the warranty was breached and that the breach of the warranty caused the damage alleged by plaintiffs.
The same is true in regard to any implied warranties as per Uniform Commercial Code §§ 2-314, 2-315.
Since third-party plaintiffs have failed to establish a prima facie entitlement to judgment, the motion must be denied.
*291 Albrecht’s liability to third-party plaintiffs is contingent upon the plaintiffs obtaining a recovery against the defendants. Under these circumstances, all issues regarding the third-party action against Albrecht must be referred to the trial court.
B. Default Judgment — Wagner
Third-party plaintiffs also seek to enter a default judgment against Wagner.
Questions exist regarding whether Wagner was properly served. The invoice from Wagner relating to this project reflects its business address as 36 A East Barclay Street, Hicksville. The third-party summons states Wagner’s address as being 36 A East Barclay Street, Hicksville. However, the affidavit of service indicates that Wagner was served by delivering a copy of the third-party summons and complaint and related papers upon “John Smith” who refused to provide his true name and who is characterized as Wagner’s managing agent at 45 East John Street, Hicksville.
The New York Department of State lists a Wagner Construction Co., Inc. with an address for service of process of 206 Dartmouth Street, Hicksville.
Third-party plaintiffs have the burden of establishing that the person served was Wagner’s managing agent. (See, Simmons v Boro Med., 270 AD2d 477 [2d Dept 2000].) The papers submitted in support of the motion do not indicate why service was made at an address different from that listed on the Wagner invoice, the address listed as Wagner’s address for service of process on the third-party summons or the address for service listed with the Secretary of State. The papers also do not contain any evidence whether the person to whom the papers were delivered had any affiliation with Wagner or was its managing agent. Since third-party plaintiffs have failed to establish that Wagner was properly served with the third-party summons and complaint, the motion for leave to enter a default judgment must be denied.
Even if service was properly made upon Wagner, the motion would have to be denied. The third-party complaint alleges six causes of action against Wagner, causes of action seventh through twelfth.
The contractual indemnity (ninth) cause of action fails because third-party plaintiffs have failed to establish that they had a written contract with Wagner or that, if there was one, it contained an indemnification clause.
*292 The eleventh cause of action premised upon Wagner’s failure to procure insurance naming third-party plaintiffs as additional insureds must fail because third-party plaintiffs have failed to establish the existence of a contract between Wagner and any third-party plaintiffs requiring it to procure such insurance.
The eighth cause of action alleges a cause of action for contribution. This claim also must fail because the third-party plaintiffs have failed to establish any negligence on the part of Wagner which gives rise to plaintiffs’ claims. Shokrian’s affidavit states, in a conclusory manner, that Wagner was negligent in performing its work. However, the affidavit fails to establish what work Wagner was performing or how that work was negligently performed.
Shokrian’s affidavit also fails to establish a basis for the causes of action for common-law indemnification, the seventh and tenth causes of action.
The twelfth cause of action alleges a breach of implied warranties. Third-party plaintiffs have failed to establish precisely what was warranted or how the warranties were breached.
Since the third-party plaintiffs have failed to establish a prima facie case against Wagner on any of its causes of action, the motion for a default judgment would be denied if the court had jurisdiction over Wagner.
Since Wagner’s liability to third-party plaintiffs is dependent upon plaintiffs succeeding on their causes of action against defendants, the matter is respectfully referred to the trial court to determine if Wagner has been properly served and, if so, to hear and determine all issues of liability and damages on the third-party claims brought against Wagner.
Accordingly, it is ordered that defendants’ motion is granted to the extent of directing plaintiffs to reimburse defendants for all expenses incurred in connection with the preparation of the report of Joel Rakower and to the extent of directing the parties to appear for a conference for the purposes of designating a new forensic accountant; and it is further ordered that defendants’ motion to preclude the use of the report of Joel Rakower is denied; and it is further ordered that third-party plaintiffs’ motion for leave to enter a default judgment against the third-party defendant Bud Albrecht Construction Corp. is denied and is respectfully referred to the trial court to hear and determine all issues of liability and damages; and it is further ordered that *293 third-party plaintiffs’ motion for leave to enter a default judgment against the third-party defendant Wagner Construction Inc. is denied and is respectfully referred to the trial court to hear and determine all issues relating to the court’s jurisdiction over said third-party defendant and, if jurisdiction is established, all issues of liability and damages relating to said third-party defendant.

. Mark Grasso verified the amended complaint on behalf of plaintiffs. The verification states Grasso is a member of the board of managers.

. The precise item to be lined with copper cannot be determined. This portion of the proposal is handwritten and is illegible or indecipherable on the writings provided to the court.