[884 NE2d 1048, 855 NYS2d 49]

WATRAL & SONS, INC., Appellant, v OC RIVERHEAD 58, LLC, Respondent, et al., Defendants.

Argued February 7, 2008; decided March 18, 2008

## POINTS OF COUNSEL

*Eric Schneider,* Kingston, for appellant. I. The Appellate Division applied the incorrect standard of strict liability in holding plaintiff-appellant responsible for the cutting of the cable and the cave-in and consequent loss of power of a third party at the excavation site. (*Lawyers' Fund for Client Protection of State of N.Y. v Bank Leumi Trust Co. of N.Y.,* 94 NY2d 398; *Matter of Columbus Park Corp. v Department of Hous. Preserv. & Dev. of City of N.Y.,* 80 NY2d 19.) II. The Appellate Division incorrectly failed to read the contract-based indemnity provision in pari materia with the negligence-based indemnity provision. (*Gillmore v Duke/Fluor Daniel,* 221 AD2d 938; *Kader v City of N.Y., Hous. Preserv. & Dev.,* 16 AD3d 461; *Hooper Assoc. v AGS Computers,* 74 NY2d 487; *Tonking v Port Auth. of N.Y. & N.J.,* 3 NY3d 486.) III. The Appellate Division erroneously imposed upon plaintiff-appellant an obligation to indemnify a third-party claim. (*New York Tel. Co. v Harrison & Burrowes Bridge Contrs.,* 3 AD3d 606; *N. A. Orlando Contr. Corp. v Consolidated Edison Co.,* 131 AD2d 827; *Lizza Indus. v Long Is. Light. Co.,* 44 AD2d 681; *Buckeye Pipeline Co. v Congel-Hazard, Inc.,* 41 AD2d 590; *532 Madison Ave. Gourmet Foods v Finlandia Ctr.,* 96 NY2d 280.) IV. The Appellate Division erroneously found that plaintiff-appellant violated provisions of the Industrial Code. (*Schmidt v Merchants Despatch Transp. Co.,* 270 NY 287; *Martin v Herzog,* 228 NY 164; *Duncan v Kelly,* 249 AD2d 802.) V. The Appellate Division incorrectly held plaintiff-appellant responsible for damage to an electrical cable and subsequently a cave-in at the work site, when, in fact, the record educed at the trial court is absent of such proof.

*Siller Wilk LLP,* New York City (*M. William Scherer* of counsel), for respondent. I. Article 10 of the contract is not dependent upon proof of Watral & Sons, Inc.'s negligence. (*Vermont*

*Teddy Bear Co. v 538 Madison Realty Co.,* 1 NY3d 470; *Bailey v Fish & Neave,* 8 NY3d 523; *South Rd. Assoc., LLC v International Bus. Machs. Corp.,* 4 NY3d 272; *Lawyers' Fund for Client Protection of State of N.Y. v Bank Leumi Trust Co. of N.Y.,* 94 NY2d 398; *Brown v Two Exch. Plaza Partners,* 146 AD2d 129, 76 NY2d 172; *Warnett v A.J. Pegno Constr. Corp.,* 1 AD3d 207.) II. The Appellate Division's majority correctly concluded that Watral & Sons, Inc. had been negligent. (*Dermatossian v New York City Tr. Auth.,* 67 NY2d 219.) III. Any reasonable businessperson would expect the excavator to be fully responsible for what happened here. (*BP A.C. Corp. v One Beacon Ins. Group,* 8 NY3d 708; *Album Realty Corp. v American Home Assur. Co.,* 80 NY2d 1008.) IV. Watral & Sons, Inc. is bound by the stipulation as to the amount of damages paid to the adjacent property owner.

## OPINION OF THE COURT

READ, J.

This appeal calls upon us to interpret provisions in a construction contract (AIA Document A201/CM [1980][1]) to determine if Watral & Sons must indemnify landowner OC Riverhead 58 for damages allegedly sustained by a neighboring landowner, Adchem Corporation, during Watral's performance of excavation work on OC's property. For the reasons that follow, we conclude that OC was not entitled to contractual indemnification, and therefore reverse.

### I.

On December 6, 1999, OC entered into a contract with Watral for the excavation, drainage, and sanitary work necessary to build an Applebee's restaurant on property that OC owned in Riverhead, New York, across from the Tanger Outlet Center. The contract price, as ultimately adjusted with additions and credits, was $167,401.

On August 3, 2000, a Watral employee was excavating on OC's property for the sewer line when his backhoe struck and damaged an underground power cable supplying electricity to Adchem's adjacent property. Before beginning this work, a project superintendent employed by Sindrome Construction, Inc., the construction manager and the owner's representative on the site, had notified "New York One Call" to ask for the electric

---

**1.** The American Institute of Architects' most recent version of this form contract would appear to be AIA Document A201/CMa (1992).

line servicing Adchem to be marked. Although this was done, an unidentified electrician at some point relocated the cable.

The excavator was working 10 to 15 feet from the flags put in place to mark the cable when he struck it. Further, after the accident it was discovered that "excess cable, in the form of a loop had been buried, at the time of the original cable installation." Watral agreed to pay for the materials necessary to repair the cable, and the electrician agreed to supply his labor. At the same time, the excess loop was removed.

On August 17, 2000, the project superintendent was supervising a Watral employee, who was excavating in the same area in order to adjust the sewer's height. The ground gave way, dragging the cable toward the excavation site. The cable did not come into contact with the excavator's backhoe, but was damaged at the place where it had previously been repaired, apparently again disrupting electric service to Adchem's property. Watral once more seems to have paid for the materials necessary to fix the damage to the cable.

During the spring and summer of 2000, OC paid Watral $85,000 of the contract price, but withheld the $82,401 balance due, ostensibly because OC was involved in a dispute with Adchem over damages allegedly caused by the accidents on August 3 and August 17, 2000. OC subsequently resolved this dispute by paying Adchem $69,639.

On January 30, 2001, Watral filed a notice of mechanic's lien against the property, and on May 11, 2001, Watral commenced an action in Supreme Court to foreclose upon the lien. In its answer dated July 31, 2001, OC counterclaimed that "[i]n response to threats by Adchem to commence litigation and in order to resolve the dispute that [Watral] failed and refused to resolve, [OC] was forced to make a payment to Adchem . . . resulting in damage to [OC] in an amount at least equal to the amount [Watral] demands herein."

After the parties submitted the matter upon a stipulated statement of facts, Supreme Court found in Watral's favor, based on its interpretation of subparagraphs 4.18.1 and 10.2.5 of the contract. Construing these two provisions together, the trial court concluded that Watral was required to indemnify OC only for its own negligent acts, and that the stipulated facts did not establish that the damage to the cable was Watral's fault. Accordingly, Supreme Court entered judgment for the balance due Watral under the contract, with interest to be computed from November 30, 2000.

The Appellate Division, with two Justices dissenting, subsequently modified Supreme Court's order, ruling that Watral was obligated to indemnify OC under subparagraph 10.2.5, which "was intended to impose a broader duty of indemnification upon [Watral] than subparagraph 4.18.1," which concededly required negligence (34 AD3d 560, 564 [2d Dept 2006]). Moreover, the majority disagreed with Supreme Court's findings of fact: "Although the Supreme Court found no evidence that [Watral] was at fault for either of the incidents in which the cable was damaged, the stipulated facts point to a contrary conclusion" (*id.* at 566). Accordingly, the majority concluded that OC was also entitled to indemnification under subparagraph 4.18.1 and common-law indemnification principles. Watral appeals to us as of right, pursuant to CPLR 5601 (a), and we now reverse.

## II.

Article 4 of the AIA form contract at issue on this appeal is entitled "CONTRACTOR," and paragraph 4.18 is entitled "INDEMNIFICATION." Subparagraph 4.18.1 states that

> "[t]o the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, the Architect, the Construction Manager, and their agents and employees from and against all claims, damages, losses and expenses, including, but not limited to, attorneys' fees arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense (1) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, and (2) is caused in whole or in part by any negligent act or omission of the Contractor . . . regardless of whether or not it is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this Paragraph 4.18."[2]

Article 10 of the form contract is entitled "PROTECTION OF PERSONS AND PROPERTY," and paragraph 10.2 is entitled

---

2. In AIA Document A201/CMa (1992), a substantially identical indemnification provision is found at subparagraph 3.18.1.

"SAFETY OF PERSONS AND PROPERTY." As relevant to this appeal, clause 10.2.1.3 provides that

> "[t]he Contractor shall take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury or loss to: . . .
>
> "property at the site or adjacent thereto, including trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction."[3]

Finally, subparagraph 10.2.5 specifies that

> "[t]he Contractor shall promptly remedy all damage or loss . . . to any property referred to in Clause[ ] . . . 10.2.1.3 caused in whole or in part by the Contractor . . . and for which the Contractor is responsible under Clause[ ] . . . 10.2.1.3, except damage or loss attributable to the acts or omissions of the Owner, the Architect, the Construction Manager or anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are in addition to the Contractor's obligations under Paragraph 4.18."[4]

First, we agree with Supreme Court and the dissenters that there is insufficient proof on the bare-bones record in this case to support indemnification under subparagraph 4.18.1. As for the first accident, the dissenters pointed out that "the parties stipulated that the electrical cable servicing the Adchem property was not where it was supposed to be, but *'had been relocated by others'* " before Watral began work (34 AD3d at 571-572 [Fisher, J., dissenting] [emphasis added]). As a result, there was no proof of Watral's negligence, and "because the record [did] not disclose the identity of the electrician responsible for the relocation," it was not possible to figure out "whether that person was someone for whose acts Watral [might] be liable, so as to trigger indemnity" under subparagraph 4.18.1 (*id.* at 572). With respect to the second incident,

---

3. The language in clause 10.2.1.3 in AIA Document A201/CMa (1992) is substantially identical.

4. The language in subparagraph 10.2.5 in AIA Document A201/CMa (1992) is substantially identical.

"the agreed-upon facts reveal only that the same electrical cable was damaged when the ground adjacent to Watral's excavation gave way, dragging the cable towards the excavation site. An employee of the construction manager was present and supervising Watral's work at the time. There was no contact between the excavation equipment and the cable, and the only damage to the cable was at the site of the previous repair" (*id.*).

As for subparagraph 10.2.5, its reach is limited in this case to "damage or loss . . . to any property referred to in Clause[ ] . . . 10.2.1.3"; namely, "property at the site or adjacent thereto, including trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction." As the dissenters noted, the only "property" damaged on August 3 and August 17, 2000 would appear to have been the cable, and "[t]here is no evidence . . . as to whether Adchem actually suffered any damage to its own property as a result of the damage to the cable, or, instead, sustained purely economic injury" which subparagraph 10.2.5 does not cover (*id.* at 574). In light of our disposition of this appeal, we need not reach and express no opinion as to whether subparagraph 10.2.5 imposes a negligence or fault-type liability standard.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed, with costs, and Supreme Court's judgment should be reinstated.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, SMITH, PIGOTT and JONES concur.

Order, insofar as appealed from, reversed, etc.